# Newman v. Mayor and Aldermen of Birmingham.

*Action against Municipal Corporation for Damage to Prop-
erty by Change of Grade of Street.*

1. *Charter of City of Birmingham; presentation of claim, before suit.*—
Technical accuracy is not required in complying with the provision
of the charter of the city of Birmingham requiring claims against
the city to be presented, *etc.*, before institution of suit thereon (Sess.
Acts 1890-91, pp. 114, 149, § 36).   The demand need not be in writing,
and it is enough if the board is fairly informed of the nature and
amount of the claim, so that it can act intelligently in the investiga-
tion and allowance or rejection of the same; and, in an action against
the city to recover damages for alleged injury to plaintiff's residence
by a change of the grade of the street in front of it, it was error to
give the affirmative charge in favor of the defendant because of a
misdescription of the plaintiff's lot in the written claim originally
presented by him to the mayor and aldermen, where there was evi-
dence tending to show that in the investigation of the claim by a
committee of the board, appointed for the purpose, the real claim of
the plaintiff was fully made known.


APPEAL from City Court of Birmingham.
Tried before the Hon. WM. M. WILKERSON.

BEN. CARTER, for appellant.—In statutory demands
made upon municipal and other authorities for payment
of a debt, or for compensation for an injury, strictness

of description is not required.   It is sufficient if the de-
mand reasonably draws the minds of the persons con-
cerned to the occurrence in question and its cause.
*Hardee v. Minneapolis,* 42 N. W. 350 ; *Wall v. Town of
Highland,* 72 Wis. 435 ; *Topper v. Town of Wheatland,* 59
Wis. 623 ; *Lyman v. Hampshire,* 138 Mass. 78.   And, it
seems, the burden of proving that the persons proceeding
to investigate were in fact misled   by any inaccuracy,
ambiguity, or other indefiniteness in the description, is
on the party for whom they acted and who relies on such
defense.—*Donnelly v. Fall River,* 132 Mass. 229 ; *Lyman
v. Hampshire, supra.*

GREGG & THORNTON, *contra.*—The written demand
offered in evidence was properly excluded, the same be-
ing a variance.—*McCormick v. Taylor* ;   2 Ind. 336 ;
*Abington v. Lipcomb,* 1 Q. B. 276 ; *Minick v. City of Troy,*
85 N. Y. 516.   Only one claim for damages was pre-
sented to the Board of Mayor and Alderman of Birming-
ham, and that was in writing.   It alone was acted upon.
Other parol evidence of such demand or claim was
secondary.   *Lewis v. Hudman.* 56 Ala. 186.

HEAD, J.—The appellant, Newman, sued appellee
for damages for raising the elevation of the grade of the
street and sidewalk in front of his residence, and con-
structing them accordingly.   Under the evidence, on the
merits of his claim, he was entitled to recover ; but the
court ruled that there was no evidence tending to show
that he had legally presented his demand to the mayor
and aldermen, and procured action, or refusal to act,
upon its allowance, before the institution of the suit, as
required by the city charter (Acts 1890–91, p. 114, § 36,
p. 149), and, on request, gave the affirmative charge in
favor of the defendant ; whereupon the plaintiff took a
non-suit with bill of exceptions.   The charter does not
require application for the allowance of claims to be
made in writing.   The proper description of plaintiff's
property is, "Lot 1 and part of lot 2 in block 35," front-
ing on 19th street, and bounded on the south by Sixth
Alley, upon which stood a ten-room brick dwelling-
house, occupied as his residence, where he had resided
for a number of years.   He owned no other property in
the city of Birmingham.   After the damage accrued,

plaintiff made out in writing and presented to the chair-
man of the street committee a claim in the following
words: "Mayor and Aldermen of Birmingham, To Y.
P. Newman, Dr. Said Y. P. Newman is the owner of
lot 3 and part of lot 4 in block 35, and according to the
plan and survey of said city, on which lots is his resi-
dence, erected after the grade of said street had been
fixed by the city;" &c., going on to describe the acts of
the defendant in afterwards raising the grade and injur-
ing the property, and claiming $1,500 damages. It is
thus seen that a mistake was made in the numbers of
the lots. The evidence tends to show that this claim
was put before the board of mayor and aldermen by the
chairman of the street committee, and went into the cus-
tody of the clerk of that body, who was the proper custo-
dian of such papers, and who produced it on the trial
of this cause. The minutes of the regular board meet-
ing, on September 21st, 1892, which was shortly after
this claim was preferred, shows, as follows: "The Mis-
cellaneous and Street Committee, through Alderman
Levy, reported as follows, and the reports were concurred
in.  *  *  *  *  Petition of Y. P. Newman for $1,500
damages caused by change of grade, disallowed." The
evidence tends to show that there was no oral comment
upon, or discussion of, the claim at that time, but that
the board acted alone upon the recommendation or report
of the committee, which included also a number of other
claims, several of which were of the same character.
Levy was the chairman of the committee; Moore and
Perkins the other members. Before they reported, they
issued a citation to plaintiff to appear before them. He
obeyed, and when before them discussed the matter with
them, and told them again that he demanded $1,500.
He says, "I talked to them about my residence, and ex-
plained to them how the residence had been injured.
No other property was mentioned between us, and noth-
ing was said about any lot numbers. Mr. Levy was my
next door neighbor and had been for several years. He
knew which my property was, and where I lived." A.
O. Lane was the mayor of the city at the time, and was
present and presided at the meeting when the report of
the committee was acted upon. He testifies that he was
familiar with the claim plaintiff was making before the
board, for injury to his residence; that he lived very

[Newman v. Mayor and Aldermen of Birmingham.]

near plaintiff, and knew where his residence was; generally passed by his house, along 19th street, on his way to his own home. He had discussed the matter with plaintiff, and told him he thought he claimed too much. The three members of the committee were absent from the city at the time of the trial of this cause. The evidence shows that it was the practice of the board to refer all such claims to the said committee. As we have seen, plaintiff's testimony tended to show that he explained to the committee how his property was injured. His testimony also shows that a very material part of the injury consisted of the filling up of the alley which bounded one side of his property. It was for the jury to say, under the evidence, whether or not that was explained to the committee. If plaintiff's lots one and two in block 35 were bounded by the alley, it is evident that lots three and four in the same block were not. The board trusted the committee to ascertain and consider all material facts, and it was the duty of the committee to advise the board of such facts as it was deemed material for them to know, and it is just to presume they did so, or that the board was satisfied with what they ascertained and did, without requiring any special report of facts. Very likely, if such a special report had been required, the board would have been left in no ignorance of the real claim of the plaintiff. The purpose of the statute requiring the presentation was to give the board opportunity to investigate and adjust claims preferred against the city, without the expense of litigation. Technical accuracy is not required. It is enough if the board is fairly informed of the nature and amount of the claim, so that it can act intelligently in the investigation and allowance or rejection of the same.

We are clearly of opinion the case should have been submitted to the jury.

Reversed, non-suit set aside, and cause remanded.